

F I L E D
JAN - 4 2010
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

8500 CDC, LP,
A Virginia limited partnership,

        Plaintiff,

    v.

Case No. *1:10cv 625 LMB/TRJ*

HARTFORD CASUALTY
   INSURANCE COMPANY,
An Indiana Corporation,

        Defendant.

SERVE:    Corporation Service Company,
          Registered Agent
          11 South 12th Street
          Richmond, Virginia 23218

## COMPLAINT

NOW COMES the Plaintiff, 8500 CDC, LP, by counsel and pursuant to the Federal Rules

of Civil Procedure, and states as its Complaint against Defendant, Hartford Casualty Insurance

Co., as follows:

### PARTIES

1.    8500 CDC, LP ("CDC") is a Virginia limited partnership with its principal place

of business in Vienna, Virginia.

2.    Hartford Casualty Insurance Company ("Hartford") is an Indiana corporation with

its principal place of business in Indiana or Connecticut.

### JURISDICTION AND VENUE

3.    Jurisdiction rests in this judicial district pursuant to 28 U.S.C. § 1332(a) as there

is diversity of citizenship of the parties and the amount in controversy exceeds the sum or value

I-941647.I
06/03/2010

of $75,000.00, exclusive of interest and costs.

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 as a

substantial part of the events or omissions giving rise to the claim occurred in this judicial

district.

## FACTUAL BACKGROUND

5.      CDC is a single purpose limited partnership formed to own and operate a

commercial property located at 8500 Leesburg Pike in Vienna, Virginia.  The commercial

property includes a commercial building (the "Building") leased to tenants as well as a four-story

parking garage (the "Garage") located immediately adjacent to and connected by canopy to the

Building.

6.      CDC insured both the Building and the Garage through a "Commercial Package"

of insurance policies issued by Hartford (collectively, the "Policy").  During all relevant periods,

CDC timely paid the premiums due for the Policy and was entitled to full coverage consistent

with its terms.

7.      On  or about August 16, 2008, the Garage suffered a partial collapse resulting

from vibrations emanating from a nearby project to extend the Metro Rail System to Dulles

Airport (the "Collapse").

8.      As a result of the Collapse, CDC incurred both direct and indirect losses,

damages, and expenses.  These losses, damages, and expenses include, among other things, the

following: (a) physical damage to the Garage caused by the Collapse; (b) new and increased

expenses resulting from the Collapse (e.g., off-site parking and shuttle bus expenses for tenants);

and (c) business interruption expenses.  The cost to repair the garage and incidental expenses

2

relating to accommodating tenants of the building for lost parking exceeded $2.5 million. In addition, CDC has documented over $1 million in business interruption and related expenses.

9.     The losses, damages, and expenses incurred and suffered by CDC are covered by the Policy.

10.     Following the collapse, Hartford has acknowledged and accepted that the Collapse and resulting losses, damages, and expenses resulted from a Covered Cause of Loss as defined by the Policy. Although Hartford has paid and reimbursed CDC for a portion of CDC's losses, damages, and expenses, Hartford has refused to pay the full amount to which CDC is entitled under the Policy. The total amount that remains unpaid is in excess of $2 million.

## COUNT ONE – BREACH OF CONTRACT

11.     CDC repeats and alleges paragraphs 1 through 10 as though the same were set forth fully herein.

12.     Pursuant to the terms of the Policy, the Collapse resulted from a Covered Cause of Loss, that caused CDC millions of dollars in losses, damages, and expenses, all of which is covered under the Policy.

13.     None of the exclusions in the Policy would bar or limit coverage for these losses, damages, and expenses.

14.     Hartford's failure to reimburse CDC for the full amount of its covered losses, damages, and expenses is a breach of the terms of the Policy.

15.     CDC has been damaged by the amount Hartford has wrongfully refused to cover.

## COUNT TWO – BAD FAITH

16.     CDC repeats and alleges paragraphs 1 through 15 as though the same were set forth fully herein.

I-941647.1
06/03/2010

17.   In failing to reimburse CDC fully in accordance with the Policy, Hartford has acted in bad faith and without regard to CDC's rights. Hartford's bad faith has manifested itself throughout the time period after the Collapse and is evidenced by the following, which is provided by way of example and is not exhaustive:

(a)   Upon learning of the Collapse, Hartford immediately hired subrogation counsel to develop new theories by which to avoid responsibility for the Collapse. Subrogation counsel attended the first site visit, which occurred within a week of the Collapse, and immediately began trying to explain away the Collapse with non-covered rationales.

(b)   As part of this initial meeting, Hartford also sent a retained expert who, like subrogation counsel, immediately began pointing a finger at CDC and others for the Collapse based on nothing more than a visual inspection. To the best of CDC's knowledge, information, and belief, Hartford's expert did not conduct a single test to determine the cause of the Collapse or the effects of the Collapse, and instead offered nothing more than conjecture based on perfunctory inspections.

(c)   As a direct result of retaining a subrogation attorney, whose job it was to place responsibility on parties other than Hartford, the engineering firm who had previously worked on the Garage for years for CDC became a target of Hartford's subrogation efforts. Prior to that time, the engineering firm had been working to determine the cause of the Collapse. Because of the potential conflict, CDC was forced to retain a new engineering firm that had no previous experience with the Garage. This hiring increased expenses and caused considerable delay in assessing and repairing the Garage.

(d)   The involvement of subrogation counsel in the first site visit caused considerable delay early in the process of analyzing the Collapse and remediating the premises

I-941647.1
06/03/2010

and, by all standards, was egregious. In fact, the problems caused by including subrogation counsel were so significant that Hartford informed CDC that it was changing its policy with respect to involving subrogation counsel based on the experience.

(e)     Through its actions, Hartford refused to investigate the cause of the Collapse in good faith. Hartford retained a "hired gun" expert who prejudged the Collapse in bad faith and without a proper investigation. Hartford failed and refused to locate and discuss the Collapse with the original construction contractor of the Garage, thereby forcing CDC to locate that company and get its analysis. That company's former chief engineer unequivocally stated that all of the resulting physical damage for which CDC sought recovery was caused by the Collapse itself. That conclusion was joined by a third engineer retained by CDC with Hartford's approval. Despite Hartford's glowing endorsement of this engineer, Hartford refused in bad faith to consider the conclusion reached by anyone other than its own "hired gun."

(f)     In addition to ignoring its duties to act in good faith in investigating the cause of the Collapse, Hartford also has denied certain categories of damages in bad faith and without justification. For example, Hartford has refused to pay any business interruption losses, despite the fact that CDC has provided written documentation substantiating those losses and their direct link to loss of use of the Garage.

(g)     Hartford's actions constitute bad faith based upon an intentional and willful refusal to investigate CDC's claims in good faith prior to denying coverage.

18.     Because Hartford has breached its duty of good faith under Virginia law, CDC is entitled to its costs and expenses, including reasonable attorney's fees incurred in bringing this action. Hartford clearly acted in its own interest, with an intentional disregard for the interests of CDC.

I-941647.1
06/03/2010

WHEREFORE, 8500 CDC, LP seeks judgment against Hartford Casualty Insurance Co.

in an amount to be determined at trial, but which is in excess of $2 million plus costs and

expenses, including reasonable attorney's fees, and pre-judgment and post-judgment interest.

## JURY DEMAND

The Plaintiff, 8500 CDD, LP, hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Conrad M. Shumadine
VSB No. 4325
Brett A. Spain
VSB No. 44567
Counsel for 8500 CDC, LP
WILLCOX & SAVAGE, P.C.
One Commercial Place, Suite 1800
Norfolk, Virginia 23510
(757) 628-5500 Telephone
(757) 628-5566 Facsimile
bspain@wilsav.com
cshumadine@wilsav.com

I-941647.1
06/03/2010